Our second case this morning is National Immigrant Justice Center v. United States Department of Justice Mr. Johnson. May it please the court I'm Jeff Johnson and I am the attorney general of the United States Department of Justice. I'm here to discuss the case of Foyer v. Exemption 5. Foyer v. Exemption 5 shields from disclosure only those agency materials that would not be available by law to a party in litigation with the agency. Everyone agrees that ex parte communications, those between an adjudicator and interested party, normally must be disclosed to the other side in civil litigation. The attorney general's communications with lawyers in the Office of Immigration Litigation and the Office of the Solicitor General regarding specific certified cases are ex parte communications. Under the flexible, functional approach courts use to identify interested parties, lawyers from OIL and OSG qualify. Oil lawyers defend all removal decisions, whether arising from the BIA or from the attorney general himself in a certified case, on petition for review in federal court. And lawyers from the Solicitor General's office do the same thing in any case that reaches the Supreme Court, as well as coordinating litigation in the lower federal courts before then. But in this context and at this stage of the proceedings, those units within the DOJ are not acting as advocates. They're acting as legal advisors. They're the AG's legal staff, not an advocate. So I think that that may sort of ignore the sort of practical reality about what happens here. Remember, oil lawyers litigate these removal cases all day long, every day in federal court. To think that they could all of a sudden just simply set that aside and put that interest all to one side because the attorney general has asked them in a certified case for their opinion, I think would sort of highlight formalism over functionalism here. Lawyers do that all the time, assume different roles with respect to different clients. And context is everything here. The context here is that these units within DOJ and the lawyers that were called on by the attorney general for advice in this review were not acting in an advocacy role wearing an advocate's hat, even though they could be called upon to do that at a later point. So I think that's not obvious, Your Honor. So, for instance, the government has defended some of its withholding on the basis of attorney work product doctrine. That doctrine, of course, only applies when the government is anticipating future litigation. And some of the Vaughn Index documents in this case suggest that, in fact, that they were thinking about their ongoing litigation in the district and federal circuit courts. Well, the primary claim here is deliberative privilege. Correct. There's deliberative privilege as well as attorney work product and those things. But, again, if the question, Your Honor, is are these lawyers necessarily able to separate their work defending removal decisions in federal court, including the ones that they'll be defending in those specific cases, then I think it's relevant that the government itself insists that, in many times, what they're doing when they're talking to the attorney general in these cases is advancing specific litigation points for future litigation. So, for instance, sort of on that front, we have Supplemental Appendix 99. The Vaughn Index says, handwritten notes on matter of RA, semicolon, references to communication with OSG. In another place, Documents 80 and 81, 133 to 134, those are talking about anticipated BIA litigation because of certification in a case called Compion. So I think that it is stilted and somewhat formal to think that because these lawyers spend all of their time furthering removal interests in their federal court litigation that they can set that all aside and simply act as neutral advocates when they are working with the attorney general. I also think that the unique two-track structure of immigration review makes this particularly problematic. There's no reason that I can see from the government's brief, Your Honor, that a lawyer in OIL couldn't, like any good appellate lawyer, look out over the world of BIA decisions and say, that one's going to be difficult to defend on appeal. It would be much easier if the attorney general would take the decision, overrule old immigrant-friendly precedent, and then I could go and defend it more easily in this case. And from what I can tell, there's nothing in the government's position that would suggest that those are not ex parte communications, even though the chain was started by someone in OIL looking to get help to win a case that was about to be filed in federal court. I also think, for what's worth, Your Honor, that that sort of unique aspect of the immigration structure makes this a particularly compelling case for where these communications should be treated as ex parte and where there will be lots of ways for the attorney general to still get the kinds of advice that he would like to get. So, for example, to name a few, the attorney general, I believe, could still get broad, non-case-specific advice from lawyers in the Office of Solicitor General or from lawyers in OIL if he wished to do so. If he wished to do so, he could get case-specific topics from a host of lawyers in the Department of Justice, such as the OLC. So, for instance, if you look at the Vaughn Indices in this case, I would say the majority of the documents are no longer at issue because they don't involve communications involving OIL or OSG personnel. Mr. Johnson, let me tell you what's on my mind. You can tell me I'm misguided. I'm thinking about the possible collateral kind of consequences of the rule that you're asking for, the holding. And I'm thinking about it in terms of just to pick an agency, a different agency. Take the SEC, okay? In the SEC world, and you may know this from your practice, I don't know, the SEC, the commission itself, meets with the Division of Enforcement in response to these so-called Wells submissions all the time. And a Wells submission is a submission trying to encourage the commission not to take a particular enforcement action. That's all it is. It's just a brief to the commission saying, don't pursue enforcement action here. Sometimes, though, of course, the commission does. Oftentimes, it will. And that will proceed in front of an administrative law judge, okay? And then if you've lost, if your client is lost, you can appeal to the D.C. Circuit. Very, very common pattern. In that D.C. Circuit litigation, it's almost sure that Division of Enforcement lawyers, those lawyers that may have been conferring, you know, in the early stages of this with the commission, will be sitting at council table in the D.C. Circuit. So what I'm worried about here, and we can come up with the same fact pattern in like an EPA world or an FTC world or something like that, that principals often are receiving all kinds of advice on enforcement actions before the enforcement actions go forward. And I don't know how under the holding that you're asking for here. I mean, I know you're saying, oh, that's kind of immigration specific. Well, I mean, in one regard, it is, but in another regard, it's not. And everything that here is, you know, at this stage protected by a deliberative process would seem it all be opened up in all those other scenarios that I'm worried about. I understand, Your Honor. I think that it's not clear to me from your example that it does have the same features that we're talking about here in the litigation context for immigration. So, again, to go back to the unique two-track system where the immigrant can go to federal court for an adverse VA decision immediately or the attorney general acting sua sponte without notice can then certify. Right. Those lawyers from – what's it called? Whatever the acronym is. OI something. OIL. Yeah. Okay. OIL. There's a number of them. The OIL people. All right? Okay. Those OIL lawyers, the reason you're saying they're ex parte is because as you try to, you know, posture this, those are the lawyers that will eventually be litigating. Right? Yes, and they do litigate these cases all the time in federal court. Right. But they're also taking – one day they're litigating or maybe six days a week they're litigating, but one day a week they're advising the attorney general. You know, and that's not uncommon in government. People are putting one hat on, taking – they have different responsibilities. And so I just don't know how with – if we think about EPA, FTC, SEC, et cetera, et cetera, I don't know how you can make this immigration specific. So that's where I guess I'm just not familiar with another agency situation, and the government has not pointed to one in its briefs where you can have this sort of bypass process where, again, a lawyer from OIL could be looking out at a BIA decision that orders someone removed and saying, that's very difficult to defend under existing precedent. I know that the attorney general might be interested in that. Or the attorney general might come to him and say, I saw this BIA decision. It's very difficult to defend. I know you're going to lose in federal court if you go there. Why don't I certify it, overrule that precedent, and then we can go to federal court and you get the benefit of Chevron when that case returns there. I'm not familiar with another agency that has that sort of interesting structure that allows for a kind of cooperation between the attorney general and his litigating team. When an attorney general, again, is supposed to be – he's supposed to only be wearing an adjudicator's hat during this part of the process. He's supposed to be a neutral judge assessing the immigration laws. So I think that there are ways to cabin this to an immigration-specific decision and that in the event that you think that it sweeps more broadly than that, I guess the question then becomes, well, are these interested parties, just because we've been doing it this way, is it okay? And if they actually do have an interest specific to a specific case, then that seems to fall within the ordinary test for adverse party, interested party in those communications. Again, they can take place. No one is saying that they can't talk. They're just saying that just like the regular adversary process, those discussions need to be disclosed so the other side can tell whether or not they should respond to something being told to the adjudicator. To sort of harken back a little bit to something we discussed earlier, I do think that there are important due process implications that should be considered in this case in that it at least gives rise to an appearance of bias when the same person neutrally advising on a matter is someone who spends all of his or her time advocating against immigrants on that matter in federal court and who may well end up doing it in that very same case. And so I think in interpreting the scope of the ex-party communication doctrine, those due process interests should be borne in mind as we do that. If there are no further questions, I'll reserve the balance of my time. That's fine. Good morning. May it please the court, Karen Schoen on behalf of the Department of Justice. Plaintiff is essentially asking this court to create a rule that says that an attorney who may ultimately be called upon to defend an adjudicator's decision can't advise that adjudicator when he's making that decision. And that just can't be right. There's no principle that requires such a result. Plaintiff agrees that the attorney general can seek advice from the Office of Legal Counsel, for example, when he is reviewing an immigration case. But there's no difference here between advice from the Office of Legal Counsel on the one hand or attorneys from the Office of Immigration Litigation, OIL, or the Solicitor General's Office on the other hand. The fact that those OIL and OSG attorneys may be called upon to defend the attorney general's decision if the judicial review is sought in the Court of Appeals or the Supreme Court simply can't turn these into ex-parte communications. And I think it's important to keep in mind that when these attorneys litigate in the federal courts, they are representing the attorney general. He is a party. When an alien seeks judicial review of a decision, the attorney general is the named respondent. He is a party. And so the attorneys in OIL and OSG are playing the same role, essentially, that the attorney general is. They're advising him when he is serving as adjudicator, and they are representing him when he is a named party, the respondent, in a case. And it just can't be ex-parte when an attorney is talking to his own client in that respect. They are serving the same role, and it's sort of a singular function that they are always representing the attorney general. They're not representing some outside interest separate and apart from the attorney general. And I think that's important to keep in mind when plaintiffs are suggesting there may be some appearance of bias or interest. It's always the attorney general's interest that they are advocating on behalf of. Well, this is just sort of a dilemma inherent in the administrative state in which the law vests an agency head with adjudicative and prosecutorial power. And keeping those lines separate is crucial for the appropriate functioning of that system. And what we're being asked to do by way of FOIA is to make an advisor an advocate for purposes of an exception to the exception under FOIA or exception to the exemption under FOIA, and that seems to me to strike at the heart of a lot of what government does through the administrative state. To Judge Scudder's point, essentially, this is very novel. Yeah, I mean, I don't know. Just in keeping with that observation, I mean, I know we're dealing with an immigration, a bunch of FOIA-related immigration requests and what have you, and the case comes to us as it's all packaged around immigration. And I read it all. I understand it. I think I do anyway. But, I mean, are you worried about the SEC, the FTC, the EPA, the Department of Ag? I think even more broadly than that. I'm not as familiar with some of the agencies who have their own litigating authority, but from the Justice Department standpoint, we represent a lot of agencies. A lot of agencies handle adjudications. There are adjudications at the administrative level, whether it's a Medicare case, the Patent and Trademark Office litigates disputes between a patentee and someone challenging the patent. We don't want to go there. We don't see any of those cases. But the Department of Justice will then defend that agency head's decision. But the Justice Department attorneys may also provide advice along the way. And so I think this has much more far-reaching implications. And I think it's also just important to keep in mind, so that occurs any time that an agency head has an adjudicative role to play, because whenever a party then challenges that decision, that agency head becomes the named defendant in a case. And so we'll be litigating. But I think it's important, too, to keep in mind, you know, you refer to a prosecutorial function. That's not the function that OIL or OSG or even the Attorney General is playing. Prosecution of removal cases is handled by the Department of Homeland Security, and it is the Department of Homeland Security attorneys who are serving as the prosecutorial function at the administrative level. When this goes to the federal courts, that is the alien seeking judicial review of the administrative decision. But that's just then sort of defending the decision. It's not a prosecutorial function in the same sense that attorneys from the Department of Homeland Security are playing. But on the same side of the V. Well, you know, there is no V at the administrative level, right? It's in the matter of the alien. Conceptually. Conceptually. Right. But then remember, it's the Attorney General who becomes the named respondent. He's on the other side of the V when it goes to federal court. And that's the side that OIL and OSG attorneys are representing, and they're always representing his interest. So, you know, I think to the extent plaintiff is concerned that there's some, you know, concern of bias or, you know, I think that same reasoning would disqualify the Attorney General himself because he is, you know, serving as adjudicator and then he is the named party who is the respondent when the alien is seeking judicial review. So if there are, I'm happy to answer any other questions. If there are no further questions, we ask that you affirm the judgment of the district court. Thank you. Mr. Johnson. Thank you, Your Honor. A few points in response. First, my friend on the other side did not dispute that lawyers from OIL may reach out to the Attorney General or vice versa and say, we have spotted a difficult to defend removal decision. We need you to fix it by overruling precedent so that we can remove the alien after the decision by BIA has been made. I think that that raises very obvious concerns that strike at the heart of both due process and Your Honor's concerns about keeping the line separate. If we are going to allow these proceedings that are supposed to be adjudications to take place before an executive official rather than an Article III court, we need to make sure that the lines between those prosecuting the law, those insuring people are removed, and those neutrally applying the law are kept separate. And I don't think that that happens in that circumstance to the extent that my colleague suggested. My colleague also suggested that what really matters is sort of who is on the caption when. I don't see any particular reason why proceedings before the BIA couldn't be styled Attorney General versus so-and-so. After all, DHS exercises executive power in the same sense that the Attorney General does. Prior to 2003, DOJ itself prosecuted immigration removal cases. It seems to me that on her theory of the case, all of a sudden these communications would become ex parte, even though they're still advised in the Attorney General and even though the BIA, of course, only exercises the power delegated to it by the Attorney General. So it seems to me a matter of titles and naming rather than reality to say that when someone is, just because the Attorney General happens to not be listed and it's called in the matter of so-and-so, that that's sort of not an issue there. My colleague also suggested that it's sort of a possibility or probability that these cases will end in litigation. Again, I just don't think that that's right, Your Honors. I think that, again, they cited the work product doctrine to say that some of these materials may be withheld because they're anticipation litigation, because some of them in the Vaughn indices even say because of pending litigation. So this isn't sort of a hypothetical. This is sort of every day. And I think that that should be enough when we're considering the consequences here. I'd just like to sort of reiterate that these decisions have momentous impact on the lives not just of those whose cases are certified, but on those whose cases are usually sort of swept up in the overruling that takes place in this case. And if we allow the Attorney General to do this with no notice, with no disclosure of communications from those advising him, then immigrants won't have an opportunity to challenge potentially biased or potentially just sort of one-sided slanted advice that the Attorney General receives in that process. So if there are no further questions. I got one question for you on that. So that point, I mean, you're very articulate on that point in your briefing, okay? That seems to me to be a procedural due process concern with respect to the way the executive branch is functioning around this. So in other words, it doesn't strike me as some – I know why you're trying to get it under FOIA. I understand that just fine. But what you're effectively saying is the world would be a whole lot better due process-wise if we were able to submit or this particular non-citizen is able to submit a brief to inform the Attorney General's decision-making. So FOIA just seems misfit, in other words. I agree that it's a misfit insofar as we're not asking to overrule any individual decision in a certain case and that these concerns, some of them can be raised by the litigants as well as they were, for instance, in Silva-Trevino. I do think as a sort of constitutional avoidance matter, when we're deciding the scope of the ex parte communications doctrine, in this sort of strange realm of agency adjudication where we're not quite sure who's doing what when, that we should err on the side that avoids procedural due process concerns about having someone who has the special ear of the supposed adjudicator being the one that gets to sort of feed information to him without the other side's notice. And so I think that even though you're right that these concerns can also come up in the context of individual cases, that they should shed light on the scope of the ex parte communications doctrine. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.